UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Petitioner, <br><br> v. <br><br> JOINT ACTIVE SYSTEMS, INC., <br><br> Respondent. | * <br> * <br> * <br> * <br> * <br> *   Civil Action No. 19-mc-91053-ADB <br> * <br> * <br> * <br> * <br> * |

**MEMORANDUM AND ORDER ADOPTING REPORTS AND RECOMMENDATIONS**

BURROUGHS, D.J.

The Government initiated this action on February 13, 2019 to secure the Court's assistance in directing Respondent Joint Active Systems, Inc. ("JAS") to comply with a civil investigative demand ("CID"). [ECF No. 2]. On February 14, 2020, the parties stipulated to an Order by which JAS was to "fully comply with" the CID. [ECF No. 7]. Currently before the Court are two Reports and Recommendations from Magistrate Judge Boal, [ECF Nos. 47, 51], regarding the Government's motions to compel production of certain documents and responses to several interrogatories, [ECF Nos. 8, 31]. After *de novo* review of those portions of the Reports and Recommendations to which JAS objects, JAS's objections are overruled. The Court ADOPTS each Report and Recommendation, [ECF Nos. 47, 51], in its entirety and the Government's motions to compel, [ECF Nos. 8, 31], are GRANTED.

I.    **BACKGROUND**

   A.    **Factual Background**

The Court recites the factual background provided by Magistrate Judge Boal:

> JAS manufactures devices for range of motion joint therapy. In some circumstances, JAS directly bills government healthcare providers for its products and services, and, in other circumstances, it sells its products to third parties, which then bill government providers for JAS's products.
>
> The United States is investigating whether JAS improperly billed for its devices, or caused third parties to improperly bill for its devices, as custom-fabricated orthotics for purchase using so-called "L codes," rather than durable medical equipment on a monthly rental basis using so-called "E codes." As part of that investigation, on June 25, 2018, the government served CID 18-01 on JAS.

[ECF No. 47 at 1–2 (citations omitted)].

### B.     Procedural Background

On December 20, 2019, the Government filed a motion to compel JAS to produce a report (the "Aledo Report" or the "Report") that the Government deemed responsive to a document request about the billing of JAS devices using "L Codes" ("December 2019 Motion"). [ECF No. 8]. JAS opposed the motion, [ECF No. 21], and the Government replied, [ECF No. 40]. On December 31, 2019, the Court referred the motion to Magistrate Judge Boal. [ECF No. 11]. While the motion was pending, JAS produced a redacted version of the Aledo Report to the Government, [ECF No. 21-1 at 7–82], however, the Government chose not to withdraw the December 2019 Motion, [ECF No. 21-1 ¶ 10 (affidavit of Paul W. Kim)]. The parties appeared before Magistrate Judge Boal on April 15, 2020 for a hearing on the December 2019 Motion, [ECF No. 45], and she issued a Report and Recommendation on April 28, 2020, advising the Court to grant the December 2019 Motion, [ECF No. 47]. JAS filed its objections to the Report and Recommendation, [ECF No. 49], and the Government responded to JAS's objections, [ECF No. 52].

On February 11, 2020, the Government filed a second motion to compel, this time asking the Court to compel JAS to produce billing materials that the Government deemed responsive to multiple document requests and to respond more fully to two interrogatories ("February 2020

2

Motion"). [ECF No. 31]. JAS opposed the February 2020 Motion and also submitted a letter, [ECF Nos. 35, 36], and the Government replied, [ECF No. 39]. On February 12, 2020, the Court referred the February 2020 Motion to Magistrate Judge Boal. [ECF No. 33]. The parties appeared before Magistrate Judge Boal on April 15, 2020 for a hearing on the February 2020 Motion, [ECF No. 45], after which she ordered JAS to file an affidavit regarding its argument that producing billing notes would be unduly burdensome. [ECF No. 46]. JAS filed its affidavit on May 5, 2020, [ECF No. 48], and the Government filed a response, [ECF No. 50]. Magistrate Judge Boal issued a Report and Recommendation on May 20, 2020, advising the Court to grant the February 2020 Motion. [ECF No. 51]. JAS filed its objections to the Report and Recommendation, [ECF No. 55], and the Government responded to JAS's objections, [ECF No. 56].

## II.  LEGAL STANDARD

"The role played by magistrates within the federal judicial framework is an important one. . . . The system is premised on the notion that magistrates will 'relieve courts of unnecessary work.'" Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) (quoting Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980)). The First Circuit construes 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72 together to define the standards of review that a district court must apply to a magistrate judge's report and recommendation. ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props., LLC, 951 F.3d 41, 47 (1st Cir. 2020). These standards vary depending on whether the motion at issue is dispositive or nondispositive. Id. Where a motion is deemed to be dispositive, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); see 28 U.S.C. § 636(b)(1)(C) ("A judge of the

court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Because JAS's response to the CID "is the entire proceeding before this Court. . . . the Court will treat the motion[s] as dispositive and will review the magistrate judge's findings *de novo* under 28 U.S.C. § 636(b)(1)(C)." In re Admin. Subpoena Blue Cross Blue Shield of Mass., Inc., 400 F. Supp. 2d 386, 389 (D. Mass. 2005); see also [ECF No. 47 at 12 (referencing Rule 72(b) in issuing the Report and Recommendation); ECF No. 51 at 9 (same)].

"While review of the Magistrate Judge's R&R is de novo, it is not an opportunity to re-run every argument made to the Magistrate Judge." Sigui v. M + M Commc'ns, Inc., 310 F. Supp. 3d 313, 319 (D.R.I. 2018); see Gonzalez-Ramos v. Empresas Berrios, Inc., 360 F. Supp. 2d 373, 376 (D.P.R. 2005) ("The objections presented, however, are not to be construed as a second opportunity to present the arguments already considered by the Magistrate-Judge."). "Even though timely objections to a report and recommendation entitle the objecting party to *de novo* review of the findings, 'the district court should be spared the chore of traversing ground already plowed by the Magistrate.'" Cruz-Berrios v. Borrero, No. 14-cv-01232, 2020 U.S. Dist. LEXIS 62848, at *11–12 (D.P.R. Mar. 30, 2020) (quoting United States v. Morales-Castro, 947 F. Supp. 2d 166, 170–71 (D.P.R. 2013)). After reviewing the magistrate's report and recommendation, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## III. DISCUSSION

### A. December 2019 Motion

Magistrate Judge Boal found that the Aledo Report was responsive to the Government's request because it specifically addressed the use of L Codes for billing, and recommended that the Court grant the December 2019 Motion. [ECF No. 47 at 5–6]; see [id. at 2 (reciting the request: "All documents and communications concerning . . . the billing of JAS devices using 'L' Codes, including any complaints received by the Company and the Company's response" (quoting ECF No. 9-1 at 13))]. She further found that JAS had failed to meet its burden of showing that the Report, which was created by a consultant hired by JAS's counsel, was privileged. [Id. at 6–9].[1] Assuming *arguendo* that the Report was privileged, Magistrate Judge Boal then found that JAS had waived privilege because "not only did JAS disclose Dr. Edwards' opinion that EZ Devices should be billed using L codes in connection with other litigation but it has now, in this case, deliberately disclosed significant portions of the Aledo Report containing Dr. Edwards' analysis and conclusions . . . ." [Id. at 11].

JAS frames its first objection to the Report and Recommendation as being limited to an objection as to scope, arguing that the Government and Magistrate Judge Boal incorrectly "treated Dr. Edwards's sub-report and the Aledo Report as the same thing." [ECF No. 49 at 6]. This is because, JAS claims, "[t]he only relevant aspect of the Aledo Report is the severable and

---

[1] Under the Kovel doctrine, attorney-client privilege may be extended "to include communications with a third party employed to assist the lawyer in rendering legal advice." [ECF No. 47 at 8 (citing Cavallaro v. United States, 284 F.3d 236, 247 (1st Cir. 2002))]. As Magistrate Judge Boal noted, however, the Kovel doctrine applies only when (1) the third-party communications are indispensable to attorney-client communications; (2) the communications are made to obtain legal advice from the attorney; and (3) the third party plays an interpretive role. [Id.]. Magistrate Judge Boal found that JAS had not provided evidence as to any of these three factors. [Id.].

5

distinct opinion of Dr. Edwards, which is solely set forth in its entirety in an appendix . . . ." [Id.]; see [id. at 14]. JAS therefore asks the Court to modify Magistrate Judge Boal's recommendation so as to require the production of only Appendices B and C of the Aledo Report, which it characterizes as "separate and distinct" from the body of the Report, or to refer the motion back to Magistrate Judge Boal for further investigation into the severability of the Report and its appendices.  [Id. at 14, 22].

The First Circuit has "h[e]ld categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate." Paterson-Leitch Co., 840 F.2d at 990–91; see Trafon Grp., Inc. v. Butterball, LLC, 820 F.3d 490, 495 (1st Cir. 2016) (finding waiver of issue not raised before magistrate and citing Paterson-Leitch, 840 F.2d at 990–91).  When presenting their position, "[p]arties must take before the magistrate, 'not only their "best shot" but all of their shots.'"  Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987) (quoting Singh v. Superintending Sch. Comm., 593 F. Supp. 1315, 1318 (D. Me. 1984)).  JAS did not make a distinction between the body of the Report and its appendices in its opposition to the motion to compel, or even reference "appendices."  See generally [ECF No. 21].  Instead, JAS defined the entire Report as one cohesive unit, arguing against production of the unit.  [Id. at 4 (defining "the Aledo Report")].  In addition, the Government states that throughout its discussions with JAS about the Report, JAS did not suggest that the body of the Report was severable from Dr. Edwards' opinion, which was contained in the appendices.  [ECF No. 52 at 4].  By not previously raising its contention that the body of the Aledo Report is distinct from its appendices, JAS has waived this argument.  See Trafon, 820 F.3d at 495.

Furthermore, JAS's argument that only the appendices contain relevant discussion as to the use of L Codes and Dr. Edwards' opinion is belied by the redacted copy of the Report attached to JAS's opposition brief, in which references to coding and Dr. Edwards' opinion are contained within the body of the Report. [ECF No. 21-1 at 12, 13, 17, 18]; see [id. at 43–50 (Appendices B and C)]. Although JAS claims that these references are "redundant, superfluous, and unnecessary," [ECF No. 49 at 6 n.1], they nevertheless are responsive to the Government's discovery requests and indicate that the Report should be read as a whole.

JAS's second objection is that the Government requested one form of relief in its memorandum in support of the motion and a different form of relief in its reply brief. [ECF No. 49 at 10, 19]. What JAS fails to acknowledge, however, is that the Government's change was precipitated by JAS's own disclosure of a redacted version of the Aledo Report after the Government filed its motion. [ECF No. 49 at 11 (noting that JAS produced a redacted copy in an attempt to resolve the Government's motion to compel); ECF No. 21-1 ¶ 10 (affidavit of Paul W. Kim) (noting that the redacted version of the Report was produced in response to the Government's motion to compel)]. It was not, therefore, improper for the Government to state in its reply that it wanted the full report, indicating to Magistrate Judge Boal that the redacted version was insufficient. [ECF No. 40 at 10 (asking for an order requiring "JAS [to] produce an unredacted version of the Report and the remainder of Dr. Edwards's opinion, in whichever materials that opinion is stated")].[2]

---

[2] To the extent that JAS argues that the Government was distinguishing the appendices as containing the entirety of Dr. Edwards' opinion, the Court has already found that the body of the Report references Dr. Edwards' opinion and is responsive to the Government's request. See [ECF No. 21-1 at 12, 13, 17, 18].

Having failed to distinguish between the body of the Report and the appendices in its opposition, and because this distinction is unwarranted in any case, the Court overrules JAS's objections.  Magistrate Judge Boal's Report and Recommendation as to the December 2019 Motion, [ECF No. 47], is ADOPTED in its entirety.

### B.     February 2020 Motion

Magistrate Judge Boal also recommended that the Court grant the February 2020 Motion. [ECF No. 51].  That motion sought an order compelling JAS "to (i) produce all billing procedures concerning government payors; (ii) produce all billing notes concerning claims billed to government payors; and (iii) respond substantively to interrogatories Nos. 8 and 9." [ECF No. 32 at 13].  JAS objects to the recommendation's conclusion as to relevancy of certain materials and again objects to the scope of the recommendation, arguing that it should be modified to reflect what JAS views as the Government's narrowing of its request in its briefing on the motion.  [ECF No. 55 at 6–7].[3]  The Government contends that the materials are relevant and that it did not narrow its requests.  [ECF No. 56 at 2, 9–10].

The specific materials at issue are: (1) "flowcharts [that] summarize how JAS billed various products nationwide, including which third parties JAS routed claims through"; (2) data contained in the "browser," or "database in which JAS maintains information concerning billing

---

[3] JAS does not object to and has agreed to provide more substantive responses to interrogatory numbers 8 and 9.  [ECF No. 55 at 8 n.2].

8

payors, including government payors"; and (3) billing notes regarding claims routed through third parties. [ECF No. 51 at 6, 7].[4]

In its opposition and corresponding declaration in response to the motion, JAS made arguments regarding relevancy and undue burden in connection with producing these materials. [ECF Nos. 35, 48]. As to relevancy, the bar for relevance in the context of an administrative subpoena such as a CID is low. See United States v. ASG Sols. Corp., No. 17-cv-01224, 2018 U.S. Dist. LEXIS 47716, at *15 (S.D. Cal. Mar. 22, 2018) (stating that "[t]he relevancy requirement is 'not especially constraining'" (citation omitted)). As Magistrate Judge Boal found in her Report and Recommendation, the information the Government seeks is clearly relevant given that the Government is investigating whether JAS improperly billed for its devices, or caused third parties to improperly bill for its devices. See [ECF No. 51 at 6–7]. With regard to burden, Magistrate Judge Boal found that JAS had failed to show that producing the requested materials would be an undue burden, noting that "some burden on the subpoenaed party is to be expected." [Id. at 7 (quoting FTC v. Church & Dwight Co., Inc., 747 F. Supp. 2d 3, 8 (D.D.C. 2010))]. In addition, she found that JAS had already produced related materials without complaining of burden and that JAS had failed to provide information (e.g., company size, estimated cost of production, capacity to perform the work) that might have established whether further compliance would in fact pose an undue burden. [Id. at 8].

In its objections to the Report and Recommendation, JAS asks the Court to modify the Magistrate Judge's recommendation to explicitly exempt JAS from producing: (1) any additional

---

[4] Although the Government was also seeking to compel production of billing notes regarding claims made directly to government payors, on March 2, 2020, JAS filed a letter indicating that it had supplemented its production to include all notes for claims made directly to government payors which mooted the issue. [ECF No. 36; ECF No. 56 at 6].

9

flowcharts that have not already been produced; (2) browser data for third parties; and (3) billing notes beyond those already produced in a spreadsheet of third party claims ("Third Party Claims Spreadsheet").  [ECF No. 55 at 5–7].

JAS argues that the flowcharts are irrelevant and that Magistrate Judge Boal mischaracterized them.  [ECF No. 55 at 5, 15–16].  First, JAS already produced several of these flowcharts, suggesting that it previously deemed them responsive to the CID.  See [ECF No. 32 at 11; ECF No. 32-5 (copy of one flowchart that JAS produced)].  Second, one of the already-produced flowcharts does not demonstrate irrelevance but, to the contrary, shows that the flowcharts are directly relevant to the Government's investigation into JAS's routing of claims for government payors through third parties.  [ECF No. 32-5 at 3 ("Medicaid[:]  JAS cannot bill L codes.  Send to 3rd Party[.]  Need local O&P's?")].  Even if, as JAS contends, the flowcharts have not been updated for several years, because the CID sought information regarding JAS's billing practices going back to January 1, 2005, see [ECF No. 2-3 at 3], the flowcharts—even if not current—are responsive.  Further, even if these flowcharts reflect "informal," as opposed to official, billing procedures, JAS does not dispute that employees used the flowcharts.  See [ECF No. 48 ¶ 13 ("[T]here was never any policy (informal or otherwise) or training related to what data should be inputted into these charts. As such, the insurance workflow charts were extremely informal and have not been updated in years. In fact, JAS used these flowcharts only for about eight (8) years . . . ."); ECF No. 55 at 8 n.2 (stating that "flowcharts do not represent JAS policies and procedures")].  Finally, as Magistrate Judge Boal noted, JAS provided no support for its contention that the Government is limited to investigating JAS's activities within

this district, rather than nationwide, therefore flowcharts on insurers outside of this district are relevant.  See [ECF No. 51 at 8–9].

Lastly, JAS contends that the recommendation regarding the production of browser data and notes should be modified because the Government indicated in its briefing on the motion that it was willing to accept a more limited response to its requests.  [ECF No. 55 at 16–18].  As the Government notes, however, this is inconsistent with the record.  See [ECF No. 56 at 9–10; id. at 10 n.3 (citing references to the Government's requested relief from the Government's briefings on the motion)].  Contrary to JAS's assertion, the scope of the Government's requested relief as to browser data was always limited to billing related to all *government* payors (including claims routed through third parties), not all payors.  See, e.g., [ECF No. 32 at 13 (seeking an order compelling JAS to "produce all billing procedures concerning government payors"); ECF No. 50 at 12 (discussing browser entries for government payors)].  In addition, if JAS believes that "the Third Party Claims Spreadsheet contains, as far as JAS knows, all the claims made by third parties to government payors for JAS devices," then JAS will be in compliance with the CID once it provides corresponding billing notes.  [ECF No. 56 at 10; ECF No. 55 at 17 n.7 ("To be clear, JAS is not insinuating that it is aware of claims made by third parties to government payors related to its medical devices that are not reflected on the spreadsheet . . . .")].  In any case, the Court agrees with the Government that modification of the Report and Recommendation is unnecessary.[5]

---

[5] To the extent that JAS is suggesting that complying with the recommendation as written will impose an undue burden, Magistrate Judge Boal found that JAS failed to provide evidence in support of such a burden, and the Court adopts the Report and Recommendation as to this finding.  See [ECF No. 51 at 8 ("JAS has provided no information regarding the potential disruption to its business, estimated costs of producing the records, the size of its operations, or its capacity to handle the workload. . . .  Therefore, I find that JAS has failed to make the showing necessary to establish undue burden.")].

Having reviewed JAS's objections to the Report and Recommendation *de novo*, the Court overrules JAS's objections. Magistrate Judge Boal's Report and Recommendation as to the February 2020 Motion, [ECF No. 51], is ADOPTED in its entirety.

## IV.     CONCLUSION

For the foregoing reasons, JAS's objections to the Report and Recommendation regarding the December 2019 Motion are overruled, and the Court ADOPTS the Report and Recommendation, [ECF No. 47], in its entirety. In addition, JAS's objections to the Report and Recommendation regarding the February 2020 Motion are overruled, and the Court ADOPTS the Report and Recommendation, [ECF No. 51], in its entirety. Accordingly, the Government's motions to compel, [ECF Nos. 8, 31], are GRANTED.

**SO ORDERED.**

October 7, 2020                                                                     /s/ Allison D. Burroughs
                                                                                             ALLISON D. BURROUGHS
                                                                                             U.S. DISTRICT JUDGE